Victor Martinez **RODRIGUEZ, Jr.**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–86–066–CR.

Court of Appeals of Texas, Corpus Christi.

April 2, 1987.

Jose Luis Pena, Harlingen, for appellant.

Ben Euresti, Jr., Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellant appeals his conviction for the offense of aggravated kidnapping for which he was assessed five years' imprisonment. Appellant and another man, Gilberto Cordona, were indicted for abducting Adela Aleman by threatening to use deadly force against her and with the intent of violating and abusing her sexually. The cases were severed and appellant was tried first. He asserts five points of error. We affirm the conviction.

By his first point of error, appellant complains the trial court erred in denying appellant's motion to dismiss the indictment because the State failed to meet the requirements of Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Supp.1987), the Speedy Trial Act. Appellant makes several assertions in his brief. He complains that the State was not ready for trial within the 120–day time limit; that the State failed to secure his presence; and that the State could not locate the complaining witness during the relevant time period.

Appellant was arrested on September 3, 1985, and indicted on December 11, 1985. The trial court's docket sheet reflects that the State filed an announcement of ready on December 13, 1985, two days after appellant was indicted. The docket sheet also reflects that on December 30, 1985, the State "announced ready," and trial was set for January 17, 1986. The docket sheet further shows that appellant filed a motion to dismiss for failure to comply with the Speedy Trial Act on January 17. The motion was denied on the same date. An order to that effect is shown to have been filed on January 20, the same date the jury was chosen and impaneled.

On January 21, the State filed a motion for continuance, alleging the absence of the complaining witness. However, that motion was never ruled upon and the case proceeded to trial on January 23. The complaining witness did appear and testified.

■ It is unclear whether a hearing was conducted on appellant's motion to dismiss. Appellant asserts in his brief that the State failed to announce ready when he filed his motion, or at the hearing conducted on the motion, but, instead, the State relied on its two previous announcements. It appears from the record that appellant did not present any testimonial proof to support his motion. Absent a showing that the State was not ready for trial at all times required by the Act, we will not presume it was not ready. *Johnson v. State*, 649 S.W.2d 111, 114 (Tex.App—San Antonio 1983), *affirmed on other grounds*, 662 S.W.2d 368 (Tex.Crim.App.1984). It is appellant's burden to develop and present a record which substantiates his claim. This was not done. Point of error one is overruled.

■ By his second and third points of error, appellant challenges the sufficiency of the evidence to support the conviction. In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to see if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Westfall v. State*, 663 S.W.2d 664, 666 (Tex. App.—Corpus Christi 1984, pet. ref'd).

The State's evidence of guilt reflects the following. The victim, Adela Aleman, went dancing along with her two brothers, her sister, and possibly another woman at a nightclub called the Stardust Club in Harlingen on the night in question. They left the club around 2:00 a.m. and found one of the tires flat on the car. It had apparently been slashed with a knife or a razor. Shortly thereafter, a black pickup truck drove up and the driver offered the group a ride home. Appellant was driving the truck and Gilberto Cordona was a passenger. The victim told them she lived on Kelly Street, which was located about two miles from the Stardust, and that they needed a ride to that location. Appellant suggested that the victim ride up front in the cab so that she could direct them to her house. She complied and her brothers and sister climbed into the back of the pickup.

Initially, appellant drove along the correct route but then refused to turn onto the

street the victim directed. He again refused to turn onto the next street. The victim told him she wanted to go home, but appellant continued driving towards the outskirts of town. At some point, the victim's brothers began hitting the cab of the pickup. The passenger, Cordona, began to hug, kiss, and fondle the victim by force. Her brother tried to stop the truck by breaking out its windows. Then one brother broke the window on the passenger's door and repeatedly struck Cordona with a wooden board, severely injuring his neck. The other brother attempted to force the appellant to stop the truck.

Appellant then began driving very fast and suddenly slammed on his brakes. The victim's sister and one of her brothers fell off the truck. Cordona grabbed the victim and pushed her head out the window and used her as a shield from her brother's blows. She lost consciousness that point. She testified that she did not know how long she was unconscious. When she regained consciousness, she overheard appellant and Cordona say that they were taking her to Rio Hondo and were going to kill her.

Cordona was very angry with the victim because of the damage her brothers caused to the truck and to his neck. He struck her repeatedly and bloodied her nose. Appellant drove to a field near an expressway and stopped. Appellant told her there was a pistol underneath the seat of the pickup, and Cordona showed the pistol to her. The victim emphatically testified, "[B]oth of them said they were going to kill me ... because my brother had broken the pickup."

The victim was taken from the pickup. Cordona told her that, if she had sex with either one of them, they would let her go. He proposed this as a way for her to pay for the damage her brothers had done to the truck. They threw her on the ground, and "both of them" got on top of her. She refused to have sex with them. She testified that appellant also told her he wanted to have sex with her. She said the reason appellant gave her for wanting sex was

that his wife had just had a baby and he could not have sex with her.

They returned her to the pickup and began driving towards Rio Hondo. They stopped the truck a second time. The victim was taken from the truck and Cordona grabbed a wooden board and hit her twice on the back with it. They told her they were taking her to Rio Hondo to leave her where she could not be found.

The pickup was stopped by police within the city limits of Harlingen. The victim testified that, if the police had not stopped the truck, she felt she would have been killed. She testified that she did not consent to being beaten, fondled or terrorized. She said she was not free to leave, but was restrained by appellant and Cordona.

Officer Macias, of the Harlingen Police Department, testified that on the night in question he responded to a call where he found an injured female down in the street. There were three men with her, her two brothers and another man who had stopped to help them. The woman told Macias that they had accepted a ride home and that she had jumped off the truck when the occupants refused to stop. She also told Macias that the occupants were still holding her sister by force in the cab of the truck.

About 3:30 a.m., Macias spotted the truck with three occupants in it heading back into Harlingen from the direction of Rio Hondo. He followed the truck for three or four miles and then stopped it at a well-lighted intersection. Appellant immediately got out of the truck with his hands raised. Cordona had to be told three times to get out of the truck.

The victim stayed in the truck until the police helped her out. Macias testified that she was terrified, in a state of shock, and incoherent. Her clothes were torn, the straps of her top were ripped. Her hose were torn. She was "bruised up, scratched up, and dirty." She had bruises on her face, legs, shoulders and hands. Her nose was bleeding. Macias said, "[s]he looked like she had been knocked down pretty good and dragged around."

According to the officer, this pickup truck matched the description given by the

victim's sister. The windows of the truck were broken out, and there was glass all over the inside of the cab. Macias testified that it was only a ten-to-fifteen-minute drive from the Stardust to Kelly Street, where the victim lived; that Kelly Street was approximately twelve miles from where the truck was stopped; and that the location where the truck was stopped was nowhere near the route from the Stardust to Kelly Street.

Tex. Penal Code Ann. § 20.04 (Vernon 1974) provides in pertinent part:

§ 22.04 Aggravated Kidnapping

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

\* \* \* \* \* \*

(4) inflict bodily injury on him or violate or abuse him sexually.

"Abduct" is defined in § 20.01(2) (Vernon 1974) as the restraint of a person with intent to prevent his liberation by, among other things, "(B) using or *threatening to use deadly force.* " (Emphasis ours.) Section 20.01(1) defines "restrain" as restricting "a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him . . . if it is accomplished by: (A) force, intimidation, or deception; . . . ."

 We do not consider the fact that the victim initially accompanied appellant and Cordona voluntarily as precluding the possibility that a kidnapping subsequently occurred. *See generally Phillips v. State,* 597 S.W.2d 929 (Tex.Crim.App.1980); *Travis v. State,* 697 S.W.2d 786 (Tex.App.—Dallas 1985, no pet.); *Ramirez v. State,* 692 S.W.2d 729 (Tex.App.—Waco 1985, no pet.); *January v. State,* 678 S.W.2d 243 (Tex.App.—Corpus Christi 1984, pet. ref'd); *Pack v. State,* 651 S.W.2d 389 (Tex.App.—Fort Worth 1983, pet. ref'd). The kidnapping began when the victim demanded to be taken to her home and appellant refused. Her presence, positioned between the two abductors, in the cab of the fast-moving truck then became confinement, and a substantial interference with her liberty. *See January,* 678 S.W.2d at 247.

 This abduction was a continuous, ongoing event. *See Weaver v. State,* 657 S.W.2d 148, 150 (Tex.Crim.App.1983). While it was occurring, appellant told the victim that he had a gun underneath the seat, threatened to kill her, and demanded sex from her. The fact that appellant was not the one who exhibited a gun to her, nor the one who directly caused her bodily injury, does not diminish his conduct as a principal in the offense. A threat to use deadly force in abducting a person can be communicated by words alone, separate and apart from exhibiting a deadly weapon. *Ramirez,* 692 S.W.2d at 732. Further, the intent to violate or abuse sexually may be inferred from acts, remarks and the surrounding circumstances. *White v. State,* 702 S.W.2d 293, 294 (Tex.App.—Amarillo 1985, no pet.).

 We find from the record that the State's evidence is sufficient to show appellant committed an ongoing abduction together with his threat to use deadly force and his intent to violate and abuse the victim sexually. Points of error two and three are overruled.

In his fifth point of error, appellant argues that the "jury engaged in misconduct when it failed to make a diligent effort to reach a verdict on the basis of the evidence in the record and did not consider carefully all the evidence admitted." In his argument, appellant points to several aspects of the complaining witness' testimony which he characterizes as contradictory, such as whether there were three people riding in the back of the truck as opposed to four, and where exactly the other passengers were thrown out of the truck. He asserts that because of the "endless" conflicting testimony of the complaining witness, a jury free from bias and prejudice could not have carefully examined the evidence and still have reached a guilty verdict.

 The trier of fact, in this instance, the jury, is the sole judge of the weight and credibility of the evidence and may believe or disbelieve all or any part of

any witness' testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App. 1984); *Westfall v. State,* 663 S.W.2d at 666. The jury was free to resolve any inconsistency in the evidence in favor of the State. *See Jackson v. State,* 672 S.W.2d 801, 804 (Tex.Crim.App.1984). This point of error is overruled.

■ Similarly, appellant seems to argue in his fourth point of error that the fact that he did not mention using a gun during the offense in his statement to police and that the police did not find a gun in the truck conclusively proves the victim was lying when she testified that he and Cordona exhibited a gun to her. This, he argues, shows that the State elicited perjured testimony.

■ We fail to follow appellant's reasoning. Even assuming, *arguendo,* that the victim's testimony regarding the use of a gun was false, appellant has failed to show that the prosecution knew her testimony to be false. Merely presenting testimony which conflicts with the defendant's version of the facts does not amount to prosecutorial misconduct. Appellant's indignation about who the jury chose to believe is not a basis for reversing the jury's verdict.

■ As evidence of the falsity of the victim's testimony, appellant also points to her testimony at Cordona's subsequent trial. There the victim testified that, although appellant and Cordona both threatened to kill her, they did not exhibit a gun, but only told her it was underneath the seat. This testimony appears in the instant appellate record in a partial statement of facts from Cordona's trial. Obviously, this testimony was not introduced at appellant's trial because it had not yet been given. Appellant did not request, and we have not been presented with, a record of the hearing held on appellant's motion for new trial. Thus, there is no showing that the partial statement of facts was ever introduced into evidence in this record.

It appears appellant simply requested that the court reporter include the partial statement of facts in the appellate record in this cause. This testimony was developed separately from any proceedings surrounding appellant's trial and cannot be used to supplement the appellate record in the instant case. *See Farris v. State,* 712 S.W.2d 512, 515–16 (Tex.Crim.App.1986). This subsequent testimony was not properly included in the record and will not be considered. Point of error four is overruled.

The judgment of the trial court is AFFIRMED.