# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00013-CR

**Samuel Carothers, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. 9-03-4176, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Samuel Carothers of kidnapping and assessed sentence at ten years in prison. On appeal, he contends that the evidence was legally and factually insufficient to support the conviction. He also asserts that the court erred by denying his request for a jury instruction on the lesser-included offense of unlawful restraint. We affirm the judgment.

## BACKGROUND

Carothers met A.S., an Austin resident attending college elsewhere, on the internet and arranged to meet her in person during spring break when she was staying in Austin with her grandmother. He picked A.S. up at her grandmother's house and took her to his home in Austin, which he shared with his aunt and grandmother. A.S. testified that the travel time between the two houses is about five to ten minutes.

While at appellant's house, they mostly stayed in his room which also functioned as the only entrance to the house. His aunt and grandmother were in and out of the house during this period. A.S. testified that the women were very nice to her. They talked, watched television, and used the computer to communicate with friends and burn a compact disc. Although appellant and A.S. had originally intended to go out to a movie, they decided to order a pizza and stay in.

A.S. testified that, as she lay on appellant's bed watching television, he lay down beside her and started kissing her neck and "upper part." She said they did not kiss on the mouth and she did not kiss him back. He started "messing with her belt" and she stopped him even after he said he just wanted to have oral sex because, she said, "Oral sex is just like having sex, and I don't do that like on the first time meeting." She told him that she needed to go home because she had told her grandmother she would return by 10 p.m. He eventually relented, but A.S. said he seemed angry and slammed the door on their way out to his car.

After driving two blocks toward her grandmother's house, appellant stopped the car in a church parking lot and told her that he could not drive further because he was too angry. He commented that he would get her home safely but might crash afterwards. A.S. testified that appellant asked if they could return to his home and have a "happy ending." She continued to refuse, explaining that she was not interested in having any form of sex that night and needed to return home timely to build her grandmother's trust. A.S. said he responded by arguing that her friends would tell her she was stupid for rejecting oral sex. When she told him they had not gotten together before because of her college boyfriend, appellant said he would have fought her boyfriend. Appellant also told her he had a history of assaults and that he had been to jail after one fight. A.S. testified that she

was scared by this history of assaults. After a lengthy conversation, appellant resumed driving toward her house.

A.S. testified that appellant resumed driving toward her home, but abruptly turned the car around after she made a comment that angered him. She testified that she told him, "I'm sorry that it came out like this. I told him I was shy, and he thought I said something stupid." She testified that appellant told her that "was just an excuse" and was "B.S." She said he was speeding and drove through a red light. A.S. testified that she never tried to get out of the car because "he told me that if I did get out the car, he would run me over"; she was also too nervous to try and use her cell phone to call 911. She testified that appellant drove past his house, out past the new airport, and into dark areas. She testified that appellant told her "it is dark out here and nobody will find you out here." He also told her they were so far out that her cell phone would not work. She said they were driving through dark areas without a lot of businesses or homes. She testified that he also said, "[O]ut here white people don't like black people, a bunch of red necks, and that's it." She testified that, during the ride, she got progressively more nervous and started shaking and curled up in her seat; appellant thought she needed to urinate.

She said that around the time they passed through the community of Webberville, appellant stated that he had changed his mind and wanted to have sex with her. When she again declined, he turned the car around back toward Austin. But he then turned around again, headed away from Austin, and stopped the car on the side of the road. He unzipped his pants and pulled out his penis. She testified, " I was saying no, I don't want to do it, but he was like do it, do it." She said he repeatedly, firmly told her to do it. She said his tone of voice made her fear that he would do something to her if she did not comply. She performed oral sex on him for about a minute, then he

3

told her to take off her pants; after repeated, firm commands to do so, she complied and also took off her underwear. A.S. testified that she constantly protested and asked why, but complied because she felt she must. At appellant's direction, she got into the back seat, where he groped her vaginal area and eventually tried to penetrate her vagina with his penis; she resisted by keeping her legs together, despite his shouted commands to the contrary. She said she continued to protest and tried to get up, but he pushed her down with his hand on her sternum, scaring her. She testified that she believed that, if she had tried to fight him at any point, he would have overcome her physically.

A.S. testified that appellant then told her to get out of his car because she would not have sex with him. He prevented her from getting her purse (which contained her cell phone) and clothing, so she got out wearing only a shirt and socks. It was shortly before midnight. She was near a house whose occupants lent her clothes and let her call 911. Travis County sheriff's officers stopped appellant. They retrieved some of her belongings from his car and from alongside a mile-long stretch of road.

On cross-examination, A.S. admitted that her testimony included details absent from her police report, such as her allegations that appellant claimed prior assaults, that he sped, and that he ran a red light. She denied changing into appellant's T-shirt at any time and claimed to be unaware that appellant's aunt was upset by her presence in the house.

The residents of the home who answered the door testified that A.S. was crying and appeared very upset. Bill Rabenberg testified that he first thought she had been in a car accident, but that A.S. told him her boyfriend had kicked her out of the car. Anna McCarter testified that A.S. said that someone had tried to assault her. McCarter testified that A.S. said she had been on a first date

4

and the guy wanted to do something sexual that she did not want to do; he got so angry at her refusal that she asked him to take her home. McCarter testified that A.S. said he took her somewhere else, again pressed her to perform a sexual act, and, after she again refused, said he would take her home. A.S. told McCarter that instead he took her out into the country and tried again; when she again refused, he told her that he was going to "leave her out with the white people because the white people wouldn't help her." McCarter testified that A.S. told him she was going to get out of the car, and he said she could but that she would not get any of her clothes. McCarter testified that Webberville is about fifteen miles east of Austin, that the houses are sparse—sometimes a half-mile apart—and that there are no street lights.

Marissa Gutierrez of the Travis County Sheriff's Office's victim services division testified that she responded to the scene at which appellant was being handcuffed. She described the area as in the middle of nowhere, dark, with no houses or businesses in the area.

Sergeant Jeff Anderson of the Travis County Sheriff's Office testified that he interviewed A.S. He said that she told him that she consensually got into the car and expected to be driven "that far out, but I don't know that she knew it was consensual to go out to Webberville." He also testified that she told him that, once appellant started making unwanted sexual advances, the car ride was no longer consensual.

Appellant's aunt, Sammie Eppright,[1] testified that A.S. was very pleasant to her. Eppright said she was surprised at how comfortable A.S. seemed to be in moving around the house,

---

[1] Appellant asserts in his brief that the reporter's record erroneously states his aunt's last name as "Upright."

talking with her, and especially lying on appellant's bed watching television wearing "just a T-shirt." Later, Eppright was very uncomfortable with A.S. lying on the bed with appellant and straddling him, even though it appeared to be just playful; Eppright testified that her mother, appellant's grandmother, did not appreciate such activities in her house. Eppright testified that appellant sensed her hostility and asked if he should take A.S. home. Eppright said that appellant had to slam the door when leaving because the house is settling and the door must be slammed in order to stay closed.

Appellant was charged with sexual assault by oral penetration and kidnapping. The jury found him not guilty of sexual assault, but convicted him of kidnapping.

## DISCUSSION

Appellant presents three issues on appeal. He contends that the evidence is legally and factually insufficient to support the conviction for kidnapping, and that the court erred by failing to instruct the jury on the lesser-included offense of unlawful restraint.

### Sufficiency of the evidence

When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the judgment. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App.

2004).  In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met.  *See Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). A factual sufficiency analysis can consider credibility only on those few matters bearing on credibility that can be fully determined from a cold appellate record.  Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern.  *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person.  Tex. Pen. Code Ann. § 20.03 (West 2003).  Appellant was charged with kidnapping under only the first statutory definition of "abduct," which is to "restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found." *Id*. § 20.01(2)(A) (West Supp. 2004-05).  To restrain means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person."  *Id*. § 20.01(1).  Restraint is without consent if it is accomplished by force, intimidation, or deception.  *Id*. § 20.01(1)(A).

A moving car can be intended as a place where the victim is not likely to be found. *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980) (defendant stole car and drove child around for an hour in city).  Driving victims around unfamiliar parts of a city away from where they might be expected to be found, isolating them from anyone who might help them, supports a

7

kidnapping conviction, even when the victims are returned to the place from which they were taken. *Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985). The fact that a victim initially voluntarily accompanies the defendant does not preclude the possibility that a kidnapping can occur subsequently. *Rodriguez v. State*, 730 S.W.2d 75, 79 (Tex. App.—Corpus Christi 1987, no pet.). In *Rodriguez*, the victim got into a vehicle expecting a ride home, but instead was taken to the outskirts of town, beaten, and sexually assaulted. *Id.* at 77-78. The court held that the kidnapping began when the victim demanded to be taken home; appellant's refusal converted her presence in the cab of the fast-moving truck into confinement. *Id.* at 79. The *Rodriguez* court did not establish a rule that the victim "demand" to be released; on first reference in the recitation of the facts, the appellate court wrote, "The victim *told* him she wanted to go home . . . ." *Id.* at 78 (emphasis added).

The evidence is legally sufficient to support the kidnapping conviction. Although A.S. willingly got into appellant's car, she was under the impression that appellant was taking her home. Even after they stopped and talked in the church parking lot, appellant resumed driving her home. But he then turned away from her house and sped out into dark, sparsely inhabited areas, running a red light along the way. Despite A.S.'s expressed desire to be home by 10 p.m., appellant continued to drive around until nearly midnight in rural areas with which she was unfamiliar and in which he told her no one would help her and no one would find her. He told her that he had a history of assaults, and later told her that, if she got out of the car, he would run over her. He told her that her cell phone would not work where they were. She said this made her too afraid to attempt escape or use her cell phone. When they finally stopped and he started trying to have sex with her, he

8

pushed her down when she tried to sit up. Eventually, he abandoned her on the roadside wearing just a T-shirt and socks after preventing her from retrieving her cell phone, purse, and the rest of her clothes. Appellant argues that the evidence shows that A.S. failed to make her desire to return home sufficiently clear and that his statements about violence were puffery directed at her ex-boyfriend and were not intended to intimidate her. Essentially, he argues that, although he behaved badly, the evidence does not satisfy the elements of kidnapping. We conclude, however, that the evidence, viewed most favorably to the verdict, shows that appellant restrained A.S. and intended to interfere with A.S.'s liberty by moving her around in a place she was not likely to be found.

Appellant argues that the evidence is not factually sufficient to support the verdict. He argues that, viewed in a neutral light, the evidence does not show he intended to prevent her liberation by secreting her where she would not be found. He contends that the evidence did not show that appellant knew A.S. was riding against her will. She got into the car willingly after spending six hours with appellant at his house, she never *demanded* to be taken home, and she did not call for help or try to escape. Sergeant Anderson testified that she told him she knew they were going to be driving around. When he let her out, he opened the door in front of a house where she received assistance promptly.

We can reverse only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Zuniga*, 144 S.W.3d at 84-85. There was sufficient evidence from which the jury could conclude that appellant knew A.S. wanted to be home by 10 p.m. and instead drove away from her home, roaming through uninhabited areas until midnight while

9

threatening to harm her if she got out of the car. After stopping the car in a relatively remote location, he kept her from sitting up in the back seat, before abandoning her on the roadside. He also told her that he was taking her where she would not be found or helped and was beyond the reach of cell phones. No evidence ameliorates A.S.'s testimony that appellant told her he had a history of violence and would run over her if she tried to escape. Even the fact that he ultimately let her out in front of a house does not change his intent and actions of the previous two hours of confining her in the car and moving her about in a place that she would not be found. This evidence is not so weak that the verdict is clearly wrong or manifestly unjust, nor is the contrary evidence so strong that the standard of proof could not have been met.

The evidence is legally and factually sufficient to support the conviction.

**Refusal to give instruction on unlawful restraint**

Appellant contends that the court erred by refusing to instruct the jury on the lesser-included offense of unlawful restraint. A two-step test applies when assessing whether a charge on a lesser-included offense should be given. *Pickens v. State*, Nos. PD-1437-04, PD-1454-04, 2005 Tex. Crim. App. LEXIS 959, at *11-12 (Tex Crim. App. June 22, 2005); *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).

The first step is to determine whether the offense is actually a lesser-included offense of the offense charged. *Pickens,* 2005 Tex. Crim. App. LEXIS 959, at *11; *Threadgill*, 146 S.W.3d at 665. The court of criminal appeals held that it is because "[k]idnapping is accomplished by abduction, which includes restraint, but false imprisonment is committed by restraint only." *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); *see also Anderson v. State*, 125

10

S.W.3d 729, 731 n.2 (Tex. App.—Texarkana 2003, no pet.) (legislature renamed false imprisonment offense "unlawful restraint"). The first prong of the test is satisfied.

The second step of the test requires that the record contain some evidence that would permit a rational jury to find that, if guilty, the defendant is guilty only of the lesser offense. *Pickens,* 2005 Tex. Crim. App. LEXIS 959, at *11-12; *Threadgill*, 146 S.W.3d at 665. There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Pickens,* 2005 Tex. Crim. App. LEXIS 959, at *12; *Threadgill*, 146 S.W.3d at 665. The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. *Threadgill*, 146 S.W.3d at 665. In this case, the record would have to contain evidence that appellant unlawfully restrained A.S. without also intending to prevent her liberation by secreting or holding her in a place where she was not likely to be found. *See* Tex. Pen. Code Ann. §§ 20.01-.03.

"It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the fact-finder to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). In *Hampton*, the defendant complained of the court's submission of a charge on sexual assault when he was charged with aggravated sexual assault in which the aggravating factor was the use of a knife to commit the offense; he contended that there was no evidence that he was guilty only of the lesser-included offense. *Id*. at 438-39. The victim testified that the defendant used a knife, but the police testified that no knife was recovered. *Id*. at 439. The

11

court of appeals held that the failure to recover a knife despite the testimony that appellant did not leave the apartment or have a chance to dispose of the knife raised an inference from which the jury might find that no knife was used, and thus find sexual assault without the aggravating factor of the use of the knife. *Id*. (citing *Hampton v. State*, 66 S.W.3d 430, 432 (Tex. App.—Houston [1st Dist.] 2001), *rev'd*, 109 S.W.3d 437). But the court of criminal appeals reversed, holding that the failure to recover the knife was not evidence that a knife was not used. *Id*. at 441. Because the only evidence was that a knife was used, the evidence supported conviction only of the greater offense of aggravated sexual assault and could not support conviction only of the lesser offense; accordingly, the trial court erred by giving the instruction on the lesser-included offense. *Id*.

Similarly, we conclude that the record does not support conviction only of unlawful restraint. Appellant contends that the record allowed the jury to conclude that he restrained A.S. without intending to prevent her liberation by secreting or hiding her. But he points to no evidence directly germane to that theory in the record. Sergeant Anderson testified that A.S. told him she knew appellant intended to drive "that far out" but that she did not consent to go to Webberville. This evidence does not show that appellant did not intend to hide A.S. when he drove her away from her house and his house to dark, sparsely populated areas. The only evidence of his intention is her testimony about his statements that he would run over her if she got out of the car, that they were so far out of town that her cell phone would not work, that "it is dark out here and nobody will find you out here," and that he would leave her there because the residents would not help her. We find no evidence from which the jury could have found that appellant restrained A.S. without intending to prevent her liberation by secreting or hiding her. The jury's ability to disbelieve her testimony does

not require the submission of a lesser-included offense instruction. *Hampton*, 109 S.W.3d at 441. The court did not err by refusing to instruct the jury on the lesser-included offense of unlawful restraint.

## CONCLUSION

Having found legally and factually sufficient evidence to support the judgment and no error in the district court's refusal to instruct the jury on the lesser-included offense of unlawful restraint, we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 8, 2005

Do Not Publish