Affirmed and Memorandum Opinion filed June 21, 2007








Affirmed
and Memorandum Opinion filed June 21, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00333-CR

NO. 14-06-00334-CR

NO. 14-06-00335-CR

NO. 14-06-00336-CR

____________

 

JERRY MEDEL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause Nos. 1026203,
1026204, 1026205, & 1026206

 



 

M E M O R A N D U M   O P I N I O N

In this consolidated case, appellant Jerry Medel contends
the evidence is legally and factually insufficient to support his conviction as
a party to three counts of aggravated robbery and one count of aggravated
kidnapping.  We affirm.

 








I.  Factual and Procedural Background

At approximately 3:00 a.m. on May 7, 2005, Veronica
Armendariz, Jeffrey Escobar, Natalie Goffney, and Hugh Ausobsky went to a
restaurant located near Richmond and Fondren in Houston.  The group left the
restaurant about an hour later, and as Escobar later testified, he noticed a
champagne-colored Toyota Matrix in the parking lot.  According to Escobar, a
man whom he later identified as appellant Jerry Medel exited the car and asked
Escobar for a cigarette.  Escobar gave appellant a cigarette and lit it for him. 
Appellant thanked Escobar and returned to his car.  Escobar then drove to his 
townhouse at 9595 Pagewood or 9797 Pagewood in Houston, followed by Armendariz,
Goffney, and Ausobsky.  As the two couples exited their vehicles, Escobar
noticed that the champagne-colored Matrix had followed them inside the gates of
the complex.  According to his trial testimony, Armendariz was removing things
from her car and the remainder of her group was walking toward Escobar=s townhouse when
appellant exited the Matrix and approached Escobar, Ausobsky, and Goffney. 
Escobar testified that Medel pointed a gun at him and demanded that he and his
friends give him all of their belongings.   Medel was joined by a black male
later identified as Eric Smith, and a Hispanic female subsequently identified
as  Leslie Rodriguez.  Escobar testified that the men took a pocket knife from
him, and Smith pointed the knife at Escobar and Ausobsky.  According to
Escobar, Rodriguez tore off Goffney=s shirt before the
three were ordered to lie on the ground.  Escobar testified that one or more of
the strangers kicked and hit him as he lay on the ground.  








Escobar also  testified that after he heard the Matrix
leave, he, Goffney, and Ausobsky got up from the ground, and he immediately saw
that Armendariz was not with them.  According to Escobar, he knew the Matrix
would have to pass his townhouse again to exit the gated complex, so he led
Goffney and Ausobsky inside to wait until the car had passed.  There was no
phone in the townhouse, and all of their cell phones had been taken, so Escobar
then ran toward a club where he believed he could find a police officer.  He
found an officer and reported the crime, and the officer drove him back to the
townhouse.  According to Escobar, they arrived at the townhouse at about the
same time the officer received word that suspects had been detained.  Escobar
testified that the officer drove Ausobsky, Goffney, and him to another location
where he was reunited with Armendariz and identified Medel, Smith, and
Rodriguez as the perpetrators.

Ausobsky offered similar testimony.  Like Escobar, he
testified that Medel was the first to approach the group, and that Medel pointed
a gun at Escobar.  He similarly testified that Smith held Escobar=s knife to his
side.  According to Ausobsky, Rodriguez ordered them to lie on the ground,
where Medel kicked Escobar.

Goffney did not testify that Medel pointed a gun at anyone;
instead, she testified that Smith lifted his shirt and showed the gun to the
group.  She also testified that it was Rodriguez rather than Smith who held the
knife to Ausobsky.  In addition, she testified that as Medel and his companions
were leaving, she heard him say something indicating that he Ajust wanted to
leave [Armendariz] there.@








Armendariz testified that while she was removing things
from her car, she saw Medel approach her friends with a gun.  She stated that
as her friends lay on the ground, Rodriguez ran to her, pulled off her shirt,
and told her to lie on the ground.  Armendariz heard Medel Atell[] them to
hurry up and let=s go.@  According to
Armendariz, Smith pulled her by the arm,  said that she was going with them,
and pushed her into the backseat of the Matrix.  She testified that as she sat
in the middle of the backseat, Smith pushed her head into an empty box on the
seat beside her.  She stated that she felt something against her ear that she
believed to be a gun.  According to Armendariz, Smith touched her breasts and
told her that he was going to AfC the sC out of [her],@ and Rodriguez Awas agreeing with
him that they were going to fC the sC out of me.@  Armendariz
testified that Medel Awas asking where they were going next.@  Armendariz
further testified, AWhen we were trying to find a way out of
the apartment [complex], the light-complected male was saying just to let me
out and the black male was telling him no, that I was staying.@

Armendariz testified that the car stopped once and she
heard the two men discussing whether to stop or keep driving.  According to
Armendariz, Smith told Medel Ajust to go,@ and Medel
agreed.  When the car stopped a second time, a police officer approached, and
Armendariz lifted her head enough to mouth Ahelp me@ to the officer.  

Houston police officer John Fisher testified that he saw
the Matrix run a stop sign and signaled the driver to pull over.  Medel stopped
the car in a residential area on Meadowglen in Southwest Houston.  According to
Fisher, Medel exited the vehicle and began walking toward the patrol car, but
then ran back to the Matrix, jumped into the driver=s seat, and sped
away.  Fisher called for backup and pursued the Matrix until appellant stopped
the car at a gated apartment complex at 3030 Elmside.  Fisher testified that
Smith exited the backseat of the Matrix and ran southbound down Elmside.  Medel
also ran, and Fisher caught him as he attempted to climb a gate.  According to
Fisher, two of the bones in his hand were broken in the struggle with Medel. 
He further testified that the chase began and ended in Harris County. 
Armendariz, Escobar, Goffney, and Ausobsky participated in a live lineup that
night and independently identified Medel, Smith, and Rodriguez as the same
individuals who had participated in the robbery and kidnapping.  

Fisher stated that a loaded semi-automatic pistol was found
in the Matrix, and that the gun is a deadly weapon.  He and other police
officers further testified that watches, cell phones, and other personal
property were found in the car, and that the property was identified by
Armendariz, Escobar, Goffney, and Ausobsky as property that had been stolen
from them.  Smith was captured after jumping a fence, and Officer Chris
Stephens testified that he searched Smith and discovered Escobar=s pocketknife. 
Officer Mike Faulhaber retrieved Ausobsky=s cell phone from
Rodriguez. 








Medel was charged with the aggravated robbery and
aggravated kidnapping of Armendariz, and with the aggravated robberies of
Escobar and Goffney.  He was tried with Smith, convicted on all counts, and
sentenced to a total of twenty years= imprisonment. 

II.  Issues
Presented

Medel presents six issues for review.  In his first two
issues, he contends that venue was not established in the trial court, and
thus, the evidence is legally and factually insufficient to support his
convictions.  In his third and fourth issues, he challenges the legal and
factual sufficiency of the evidence to support his convictions as a party to
two of the aggravated robberies.  Finally, Medel argues in his fifth and sixth
issues that the evidence is legally and factually insufficient to support his
conviction as a party to the offense of aggravated kidnapping.  

III.  Analysis

A.      Venue

The State bears the burden to establish venue by a
preponderance of the evidence.  Tex.
Code Crim. Proc. Ann. art. 13.17 (Vernon 2005); Black v. State,
645 S.W.2d 789, 790 (Tex. Crim. App. 1983) (en banc).  However, the evidence
used to satisfy the burden may be either direct or circumstantial.  Black, 645
S.W.2d at 790.  The evidence of venue is sufficient if it permits the
factfinder to reasonably conclude that the offense was committed in the county
alleged.  Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964); Sudds
v. State, 140 S.W.3d 813, 818 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Where venue is sought to be established by someone in a
moving vehicle, specific points of reference and measurable passages of time
constitute circumstantial evidence.  Edwards v. State, 97 S.W.3d 279,
286 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).








Medel argues that, although three police officers testified
9577 Pagewood is an address in Harris County, Escobar testified his townhouse
was located at 9595 or 9797 Pagewood; thus, he argues, the State failed to
establish venue in Harris County.  We disagree.  This testimony supports an
inference that the townhouse where the robberies occurred and where the
kidnapping began is located in Harris County.  Moreover, Officer Fisher
testified that he saw the Matrix run a stop sign in Harris County, and that the
Matrix finally stopped in Harris County. 

We hold the evidence is legally and factually sufficient to
establish venue in Harris County; therefore, we overrule Medel=s first and second
issues.

B.      Legal and
Factual Sufficiency

1.       Standard
of Review

When reviewing the legal sufficiency of the evidence, we do
not ask whether we believe the evidence at trial established guilt beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318B19, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979).  Rather, we examine the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Id. at 319, 99 S. Ct. at 2789; Mason v. State, 905 S.W.2d
570, 574 (Tex. Crim. App. 1995) (en banc).








When reviewing the factual sufficiency of the evidence, we
view all the evidence in a neutral light and set aside the verdict Aonly if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we
may reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s verdict.  Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006).  When reviewing the evidence, we must
avoid intruding on the factfinder=s role as the sole
judge of the weight and credibility of the witness testimony.  Johnson v.
State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (en banc).  We do not
re-evaluate the credibility of witnesses or the weight of evidence, and will
not substitute our judgment for that of the factfinder.  Johnson v. State,
967 S.W.2d 410, 412 (Tex. Crim. App. 1998). 

2.       Aggravated
Robbery

A person commits theft if he unlawfully appropriates
property with the intent to deprive the owner of the property without the owner=s consent.  Tex. Penal Code Ann. ' 31.03(a),
(b)(1) (Vernon 2003 & Supp. 2006).  A person commits robbery if, in the
course of committing theft and with intent to obtain or maintain control of
property, he intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  Id. ' 29.02(a)(2).  A
person commits aggravated robbery if he uses or exhibits a deadly weapon  in
the course of committing robbery.  Id. ' 29.03(a)(2).


Medel challenges the sufficiency of the evidence supporting
his convictions for the aggravated robberies of Armendariz[1]
and Goffney[2]
on the grounds that the jury charge submitted allowed the jury to convict him
only as a party and only if Smith or Rodriguez used or exhibited a firearm. 
However, we do not measure the sufficiency of evidence by the jury charge
actually given, but by the hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 239B40 (Tex. Crim. App. 1997) (en banc).  Such
a charge accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State=s burden of proof
or unnecessarily restrict the State=s theories of
liability, and adequately describes the particular offense charged.  Id.
at 240.  








Under the law of parties, a person is criminally
responsible Aif the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.@  Tex. Penal Code Ann. ' 7.01(a)
(Vernon 2003 & Supp. 2006).  Here, the charge incorrectly stated the law of
parties in that it permitted the jury to convict Medel as a party only if the
firearm was wielded by one of his companions, but did not allow the jury to
convict him as a party based on his own conduct as described in the
indictments.  Armendariz, Escobar, and Ausobsky testified that Medel held the
gun during the robberies,[3]
and Escobar testified that as he did so, he said, AHey, give me fCing everything you
got . . . .@

Whether this evidence is viewed in a neutral light or in
the light most favorable to the verdict, a jury could reasonably conclude that
Medel directed both the threat posed by the gun and his commands to surrender
property toward everyone in the group.  As the sole trier of fact, the jury
could reasonably choose to accept the testimony of Escobar, Ausobsky, and
Armendariz.  Moreover, this court will not reevaluate the weight and
credibility of the record evidence.  See Johnson, 967 S.W.2d at 412. 
Thus, under a hypothetically correct charge, a reasonable jury could find all
the essential elements to convict Medel as a party to the challenged aggravated
robberies based on Medel=s own conduct.[4]

We overrule Medel=s third and fourth
issues.

3.       Aggravated Kidnapping








A person commits the offense of kidnapping if he
intentionally or knowingly abducts another person.  Tex. Penal Code Ann. ' 20.03(a) (Vernon
2003).  A person commits aggravated kidnapping if the person intentionally or
knowingly abducts another person and uses or exhibits a deadly weapon during
the commission of the offense.  Id. ' 20.04(b).  AWhere a defendant
forcibly drives another person to various parts of a city and keeps that person
isolated with intent to prevent liberation by anyone who might be capable of
helping the person, abduction is proven.@  Wilson v.
State, 863 S.W.2d 59, 66 (Tex. Crim. App. 1993) (en banc).  

Medel first argues that AArmendariz
testified that she was kidnapped and physically assaulted by co-defendants
Smith and Rodriguez.  She also testified that only Smith and Rodriguez verbally
threatened her once she was pushed into the Matrix.@  He further
argues that Athere is no evidence that [he] agreed to or
voluntarily assisted in the kidnapping.@  

We disagree with this characterization of the evidence and
its legal effect.  A defendant can be convicted as a party if he provides aid
or encouragement.  See Tex.
Penal Code Ann. ' 7.02(a)(2)
(Vernon Supp. 2006) (stating that one is guilty as a party if Aacting with intent
to promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense@).  Evidence that
Medel may not have provided encouragement, and even may have verbally
discouraged the kidnapping, does not diminish the strength of the evidence that
he, in fact, aided in its commission.  








Evidence of a defendant=s guilt as a party
may be circumstantial.  See Vaughn v. State, 888 S.W.2d 62, 68 (Tex.
App.CHouston [1st
Dist.] 1994), aff=d, 931 S.W.2d 564
(1996) (per curiam) (en banc).  In reaching its verdict, the jury may consider
events that occurred before, during, and after the offense, and may rely on
those events as indicative of an understanding and common design to commit the
offense.  Id. (citing Moore v. State, 804 S.W.2d 165, 166 (Tex.
App.CHouston [14th
Dist.] 1991, no pet.).  Here, Armendariz testified that she did not enter the
Matrix voluntarily, but felt threatened by the gun she had seen in Medel=s hands.  Perhaps
more importantly, the evidence is uncontroverted that Medel knew Armendariz had
been forced into the car against her will, but nevertheless, he drove the car
away, isolating Armendariz from anyone capable of helping her.  See Wilson,
863 S.W.2d at 66; Rodriguez v. State, 730 S.W.2d 75, 79 (Tex. App.CCorpus Christi
1987, no pet.) (upholding conviction for kidnapping and concluding that victim=s presence against
her will between two abductors in a fast-moving vehicle constituted confinement
and a substantial interference with her liberty).  Finally, Medel=s flight from
police, both in the car and on foot, is further evidence of his guilt.  See
Bigby v. State, 892 S.W.2d 864, 884 (Tex. Crim. App.1994) (en banc)
(stating that evidence of flight Ashows a
consciousness of guilt of the crime for which the defendant is on trial@).  

Whether viewed in the light most favorable to the verdict
or in a neutral light, a reasonable jury could have found all of the elements
necessary to convict appellant as a party to aggravated kidnapping.  We
therefore overrule Medel=s fifth and sixth issues.

V.  Conclusion

Having overruled each of the issues presented on appeal, we
affirm the judgment of the trial court on each of Medel=s four
convictions.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed June 21, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).    









[1]  Trial Cause No. 1026203; Appellate Cause No.
14-06-00333-CR.





[2]  Trial Cause No. 1026206; Appellate Cause No.
14-06-00336-CR.





[3]  Of the four eyewitnesses, only Goffney did not
testify that Medel held a gun. 





[4]  Of course, we do not know the actual basis for the
verdicts on these charges.  The jury instead may have believed Goffney=s testimony that Smith exhibited a gun and convicted
Medel as a party to Goffney=s aggravated
robbery based on the restricted jury charge actually given.  Likewise, the jury
may have found that Smith used the gun during Armendariz=s robbery.  Armendariz testified that, although she
did not see the gun in Smith=s hands, she
was sure he had the gun while they were in the car and she felt the gun pressed
against her.  Although Medel does not dispute that ASmith used a gun after he kidnapped Armendariz[,]@ the testimony also supports an inference that Medel
transferred the gun to Smith when Armendariz=s
robbery began in the parking lot of Escobar=s
home.  Moreover, in discussing Armendariz=s
aggravated kidnapping, Medel admits without qualification that Athe testimony reflects [a]ppellant=s involvement in the
robberies . . . .@